Reed, J.,
delivered the opinion of the court.
This was an action at law brought by appellee to recover damage for the burning and consequent loss of near 2000 acres of native grass or pasturage, within an enclosure or fences, in October, 1886, the fire being alleged to have originated from fire escaping from the engine of appellant at a point from one to three miles distant from the grass consumed. The extent of the territory burned over was conceded, and there is no .conflict of testimony in regard to the value, the defendant below introducing no testimony upon the point. *44 The jury found for the plaintiff (appellee) in the sum of $641.66, and judgment was entered upon the verdict.
Prior to March 31,1887, the following statute was in force, Gen. Stat. sec. 2798, p. 812:
“ That every railroad company operating its line of road or any part thereof within the state shall be liable for all damages by fire that is set out or caused by operating any such line of road or any part thereof, and such damages may be recovered by the party damaged by the proper action in any court of competent jurisdiction,” etc. By an act of the above date, (Sess. L. 1887, p. 368), the above statute was re-enacted and amended so as to allow the party damaged and the railroad company, jointly, to appoint appraisers to estimate the damage caused by the fire, etc. The amendment need not be considered, as the act was passed several months after the alleged burning occurred. The object of the amendment was to facilitate adjustment of losses, and prima facie establish the amount of damage sustained.
It has never been held, nor can it be, that a party damaged must, avail himself of the provision as a condition precedent to right of recovery.
Counsel for appellant seem to have been mistaken in supposing the statute above cited to have been repealed by the act of 1887. We can find no evidence of a repeal, directly or by implication. In substance it was enacted in 1874, passed in its present form in 1877, and amended and added to in 1887. The statute is simply declaratory of the common law, except that it eliminates the question of negligence— which was at common law air important factor — and makes the liability absolute, “ if the fire was set out or caused by operating any such line of road,” regardless of the question of negligence.
It is contended by appellant, in argument, that no reference having been made in the complaint to the statute, “ the plaintiff is therefore conclusively presumed to rely upon the common law.” With this we cannot agree. It was a general statute — need not be pleaded, or referred to. If the com *45 plaint stated a cause of action under the statute, that was sufficient.
Second. It is contended, that no recovery could legally be had for want of proof of negligence. We think, as above stated, that the necessity of such proof was obviated by statute. This conclusion is warranted by the language of the statute, it being so plain that no construction is necessary. This position is, also, we think, sustained by the supreme court in U. P. R. R. Co. v. De Busk, 12 Colo. 296, where the statute was also declared constitutional.
In regard to the proof necessary to establish the principal fact, viz., that the fire was communicated by the operating of the road, we think the doctrine of inference — from circumstances — has been carried as far or farther than was legally allowable, without in any way criticising adjudicated cases. See Railway v. De Busk, supra.
We think the rule should be limited, not extended. Country juries have invariably shown themselves inimical to lines of roads operated adjacent to, or through their property, and probably in most cases, for satisfactory reasons; but under an ironclad statute, preventing the corporation from exonerating itself from blame in cases of fire, juries should not be allowed to infer or presume the fire to have so originated, for want of positive proof of some other origin, and base a verdict upon inference or guess. The fact of the origin of the fire, like any other material fact, should be established; and while the jury, within certain limits, may be left to infer the fact from the circumstances proved, such proof should be sufficient to rebut the probability of the fire having originated in any other manner. Corporations are certainly entitled to legal protection to this extent. Fires may, either intentionally or accidentally, originate in many ways, especially in the fall. That devastating fires occur frequently, perhaps annually, in districts remote from railroads, is a fact established by experience and observation; hence, the necessity of limiting inference and presumption.
The testimony in this case was clearly insufficient to establish the fact that the fire originated in operating the *46 railroad. That it originated somewhere in its vicinity is established. The testimony of reliable witnesses, who resided near it or were near it, particularly that of Mr. Erickson, whose residence was nearest, was that on the next day they drove over the ground that had been burned over, to ascertain in that way where the fire originated, and found it had been burnt to a point “ but a few steps from the railroad track.” This might have resulted had the fire originated at any other point in the vicinity. Mr. Higgs, who was at work upon a barn for Erickson, saw the smoke — could not tell in what direction it was — judged to be east of Erickson’s house. “ I recollect seeing a train of cars pass that day. It was before I saw the smoke. It seems to me it was directly after dinner. * * * I saw the smoke probably half an hour after I saw the train, or it may not be so long.” This was all the evidence connecting the railroad with the burning, except that of James Sherman, which was so “ hazy,” contradictory and improbable, and in one particular, impeached, that it should have been entirely ignored by court and jury. He seems to have been the “ missing link ” that was picked up in some manner, and put in to supply an important link in the evidence. He could give no intelligent account of himself ; said that at that time he was employed by a man residing at Chico — had been in such employment two months— boarded with his employer, yet could not remember his name, etc., and that on that particular 15th day of October he was on horseback at the point and at the time the fire originated; that it was about 12 o’clock, noon; that he was hunting two horses that had strayed; that he did not expect to find them in that locality; that he was going to Colorado' Springs, where he had no business, etc. He testified that a train passed him 150 or 200 yards distant. “I saw the fire catch into the grass. It caught from the train as I supposed.” On cross-examination, he said: “ I met the train and passed on, and then I looked back and saw the fire burning. Before I looked back I had passed about a quarter of a mile I guess. At the timé the fire caught the grass, I can’t say whether I was just looking at the train or not. I was coming into the *47 Springs and the train passed me. A short time after it passed, I looked back and there was a fire in the grass — there was no fire there when I passed.” The two statements of the same fact are so at variance as to be worthless. He also testified that he stopped that night at the “ Spalding House,” which was contradicted by the clerk and hotel register. He also said: “ It was a very windy day if I remember right.”
Erickson .testified that when he first saw the smoke, “ There was but little wind at that time * * *. The fire burned slowly for an hour and a half and then a strong wind started up and it burned fast.” Taken as a whole his testimony was entitled to no credit whatever.
There was no legal basis for the verdict — no competent evidence upon which it could be predicated, and must have been the result of prejudice, and should have been set aside by the court. The letter allowed in evidence by the court over the objection of the defendant, from Grover, superintendent, should have been rejected. It contains no acknowledgment of any liability whatever; offers to pay $200 rather than have litigation over the matter. The rule is well settled that offers of this kind, unaccepted, are not competent evidence. What effect it had, if any, cannot be known. The jury may have regarded it as conclusive, and without instructions, as an admission of all facts necessary to be ■ proved, except as to the amount of damage.
For the causes stated the judgment must be reversed and cause remanded.

Reversed.